IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:03-00436-1 |
| | § | |
| KOYODE LAWRENCE | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Koyode Lawrence's ("Defendant" or "Lawrence") Amended Motion to Dismiss for Failure to Afford a Speedy Trial [Doc. # 516] ("Motion to Dismiss"). The United States filed a Response to the Motion to Dismiss [Doc. # 518], to which Lawrence filed a Reply [Doc. # 519]. Having reviewed the parties' briefing and the applicable legal authorities, the Court **denies** Defendant's Motion to Dismiss.

## I. BACKGROUND

Lawrence, along with ten co-defendants, was indicted in this Court on November 19, 2003, on charges of conspiracy to import heroin and conspiracy to possess with intent to distribute heroin [Doc. # 1]. A warrant was subsequently issued for Lawrence's arrest [Doc. # 5]. Lawrence, a Nigerian national, at that time lived in Nigeria. On November 25, 2003, the United States Department of State ("U.S. State Department") cabled a letter to the U.S. Embassy in Nigeria, asking the Embassy to

communicate to the Nigerian Ministry of Foreign Affairs ("Nigerian Ministry") the U.S. State Department's request for Lawrence's arrest. Declaration of Timothy G.E. Hammer [Doc. # 516-2] ("Hammer Decl."), ¶ 11. Lawrence was arrested by Nigerian authorities on March 16, 2004. *Id.*, ¶ 14.

Lawrence thereafter spent more than 9 years in Nigerian custody. On July 2, 2013, the Nigerian National Drug Law Enforcement Agency ("NDLEA") surrendered Lawrence to a United States Homeland Security Investigations ("HSI") Special Agent. *Id.*, ¶ 89. Lawrence arrived in Houston, Texas, the following day, *id.*, ¶ 90, and was arraigned before a Magistrate Judge on July 9, 2013 [Doc. # 469].

## II. <u>MOTION TO DISMISS INDICTMENT</u>

Lawrence moves this Court for an order to dismiss his indictment for lack of a speedy trial [Doc. # 516]. In his motion, Lawrence argues that, because of the 9½ year gap between his indictment (in November 2003) and his arraignment (in July 2013), continued prosecution of him by the United States violates the Speedy Trial Clause of the Sixth Amendment to the Constitution.[1] The United States opposes the

---

[1] Lawrence does not seek dismissal on the basis of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), or Rule 48(b)(3) of the Federal Rules of Criminal Procedure, although he may have originally asserted statutory and rule-based speedy trial arguments. *See* Defendant's Reply [Doc. # 519], at 2 ("Please note throughout the United States' Response they mischaracterize the Defendant's Sixth Amendment Speedy Trial complaints by instead referencing the "Speedy Trial Act" clock . . ."). Despite (continued...)

motion.

Lawrence contends that the Sixth Amendment right to a speedy trial has been violated. The U.S. Constitution guarantees that "the accused shall enjoy the right to a speedy and public trial . . ." U.S. Constitution, Amend. VI.[2] "In analyzing a Sixth Amendment speedy trial claim, we balance, among other relevant circumstances, (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted his right; and (4) any prejudice resulting to the defendant because of the delay." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002) (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). In assessing these factors the Court "balances [them] by weighing the first three *Barker* factors . . . against any prejudice suffered by the defendant due to the delay in prosecution." *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (quoting *United States v. Serna-Villareal*, 352 F.3d 225, 230-31 (5th Cir. 2003)).

---

1 (...continued)
Lawrence's clear language in the Motion to Dismiss and his counsel's statement at an October 2, 2013 pretrial hearing that he only intended to pursue a Sixth Amendment argument, the United States has responded to these abandoned arguments. *See* United States' Response [Doc. # 518], at 4-6. The Court addresses only arguments regarding Lawrence's Sixth Amendment claim.

2 This Sixth Amendment right is distinct from any right a defendant might have under the Speedy Trial Act. That said, "[i]t will be the unusual case, however, where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002).

In general, under the *Barker* analysis, a defendant has the burden to demonstrate prejudice from delay of his trial. *Serna-Villareal*, 352 F.3d at 230. In such cases, a defendant must show "actual prejudice" in order to state a claim for a Sixth Amendment violation. *Id.* at 231. However, "a defendant can be relieved from bearing this burden in circumstances where the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is to be presumed." *Id.* (citing *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). Once prejudice is presumed, a defendant is entitled to relief unless the government can show that "the presumption is extenuated" or "rebuts the presumption with evidence." *Id.*

The Court must first consider the "length of the delay." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (noting that length of delay must be significant enough "[s]imply to trigger a speedy trial analysis"); *see also Laws v. Stephens*, __ F. App'x __, 2013 WL 3654551, at *3 (5th Cir. July 16, 2013) (describing the first *Barker* factor as a "threshold requirement"). If the delay between indictment and trial is greater than 1 year, the Court must "undertake[] a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *Molina-Solorio*, 577 F.3d at 304; *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) (stating that the Fifth Circuit "generally requires a delay of one year to trigger speedy trial analysis"). Here, the delay between Lawrence's indictment (on November 19, 2003) and his

arraignment (on July 9, 2013) was far greater than a year. Thus, the Court turns to the *Barker* factors.

**A. <u>Length of the Delay</u>**

The first *Barker* factor—the length of delay—tilts in Lawrence's favor.[3] The 9½ year delay here is extraordinarily lengthy (though not without precedent). As the Fifth Circuit has observed, "[o]ne lesson from *Doggett* is that the longer the delay, the greater the presumption of prejudice." *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002). Numerous courts have found similar, or even shorter, delays weigh in a defendant's favor. *See, e.g.*, *Doggett*, 505 U.S. at 652 (8½-year delay); *Molina-Solorio*, 577 F.3d at 305 (nearly 10-year delay); *Bergfeld*, 280 F.3d at 489 (over 5-year delay).

**B. <u>Reason for the Delay</u>**

While no factor alone is dispositive, the Supreme Court has observed that the second *Barker* factor—the reason for the delay—is "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *see also United States v. Heshelman*, 521 F. App'x 501, 505-06 (6th Cir. 2013) (citing *Loud Hawk*). "Prejudice will never be presumed where the Government has pursued the defendant

---

[3] The first factor "is actually a double enquiry." *Doggett*, 505 U.S. at 651. That is, it functions both as a trigger for analysis of the *Barker* factors as a whole and "as one factor among several" in balancing the factors in the speedy trial analysis. *Id.* at 652.

with reasonable diligence from his indictment to his arrest." *Molina-Solorio*, 577 F.3d at 305 (internal quotation omitted).

The reason for the delay in this case was almost entirely of Lawrence's making. The OIA, through the U.S. State Department, sent a letter to the U.S. Embassy in Nigeria on November 25, 2003, promptly after the indictment, requesting that the Embassy request Lawrence's arrest from the Nigerian Ministry. Hammer Decl., ¶ 11. After further communication about 4 months later, the NDLEA arrested Lawrence on March 16, 2004. *Id.*, ¶¶ 12-14. From that point forward, the vast majority of the delay until Lawrence's extradition to the United States was attributable to his aggressive legal actions in opposition to his extradition or to the slow pace of the Nigerian legal proceedings. Lawrence contested both the extradition generally and various procedures used by the Nigerian courts. For example, he argued strenuously that the Nigerian judge assigned to his case was biased and he sought a reassignment. Hammer Decl., ¶¶ 28-46; Declaration of Ayo Abraham Olorunfemi [Doc. # 516-4] ("Olorunfemi Decl."), ¶¶ 12-16. Lawrence later argued that the matter should be transferred to another venue within Nigeria. Olorunfemi Decl., ¶¶ 19-24. Furthermore, Lawrence appealed the lower court's rulings, resulting in further delay. Hammer Decl., ¶¶ 37-46; Olorunfemi Decl., ¶¶ 15-16, 22. These arguments, while within Lawrence's rights, were much of the reason for the extradition delays.

Lawrence asserts that the Nigerian Attorney General repeatedly delayed the proceedings by his representative failing to appear for court conferences or hearings and by failing timely to file a "written address" on the issue of Lawrence's extradition. *See* Motion to Dismiss, at 7; Olurunfemi Decl., ¶¶ 32-46. Lawrence presents no evidence, however, that the United States was responsible for, knew about, or caused these delays. Indeed, by this Court's calculations, the Nigerian Attorney General's conduct consumed only (approximately) 1½ of the 9½ years of the period in issue. Even if the Attorney General of Nigeria was at fault for not obtaining prompt adjudication of Lawrence's extradition during this period, the United States' conduct was not the "reason for the delay."

The Fifth Circuit has found this *Barker* factor to weigh against defendants in similar circumstances. *See United States v. Valencia-Quintana*, 136 F. App'x 707, 709-10 (5th Cir. 2005) (9-year delay where Defendant was incarcerated in Dominican Republic for 7 years, and Government failed to request extradition for 2 years after his release, but continuously inquired into defendant's status during that time). And numerous other courts have rejected Sixth Amendment claims where a defendant was not promptly extradited after an indictment. *See, e.g.*, *United States v. Vazquez-Uribe*, 426 F. App'x 131, 137-38 (3d Cir. 2011) (concluding, in case involving 6-year delay between indictment and extradition, that second *Barker* factor did not favor defendant

because "delay was principally a function of the different factions that were involved" and that "the [United States] government assiduously collaborated with foreign and multinational law enforcement agencies in its efforts to locate" the defendant); *United States v. Blake*, 817 F. Supp. 2d 1082, 1084-86 (N.D. Ind. 2011) (holding that the United States was not at fault for 9-year delay between indictment and extradition where foreign country delayed the extradition in order to finish punishing the defendant on other charges); *United States v. Reumayr*, 530 F. Supp. 2d 1200, 1203-07 (D.N.M. 2007) (finding that the "reason" for the nearly 7-year delay between indictment and extradition weighed against the defendant where most of the delay was caused by defendant's attempts to prevent his extradition, even where a small amount of the delay could be attributed to the United States). This Court agrees with the Ninth Circuit's comment in *United States v. Manning* that "[defendant] cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States." 56 F.3d 1188, 1195 (9th Cir. 1995) (finding defendant had waived his speedy trial rights).

In short, Lawrence actively contested his extradition from Nigeria and now comes to this Court complaining about his lack of speedy trial. The vast majority of the delay was created by Lawrence himself or was a function of the Nigerian legal

process, matters over which the United States had no control. This factor therefore weighs strongly against Lawrence. *See United States v. Kessler*, 392 F. App'x 765, 770-71 (11th Cir. 2010) (noting that "Kessler's claim that he was denied his right to a speedy trial notwithstanding the extraordinary efforts he took to avoid prosecution" could be deemed "*chutzpah*" and that the defendant's evasion from prosecution and extradition weighed against him).

## C. Timely Assertion of the Right

The third *Barker* factor—whether Lawrence timely asserted his right to a speedy trial—is neutral or possibly, at best, weighs slightly in Lawrence's favor. To the extent that Lawrence was required to assert this right only after he was brought before this Court, he asserted the right promptly. Lawrence was arraigned on July 9, 2013, and moved to dismiss the indictment on speedy trial grounds just 10 days later.[4] However, Lawrence was aware of the extradition request at or shortly after his arrest by Nigerian authorities in 2004. *See* Olorunfemi Decl., ¶ 7. He repeatedly delayed the United States' prosecution by fighting the extradition in Nigeria. In this sense,

[4] The Court notes that "it is possible for a defendant to insufficiently assert his speedy-trial rights despite repeatedly moving for dismissal on speedy trial grounds." *Laws*, __ F. App'x __, 2013 WL 36545512, at *3 (quoting *Loud Hawk*, 474 U.S. at 314). Lawrence's initial motion, however, did specifically assert a claim based on the Sixth Amendment. In that sense, Lawrence properly asserted his speedy trial rights once he was brought before this Court.

Lawrence did not timely assert his right to a speedy trial. *See Kessler*, 392 F. App'x at 771 ("[W]here a defendant is aware that charges are pending against him, his failure to make any effort to secure a timely trial on them (and his apparent desire to avoid one) manifests a total disregard for his speedy trial right" (internal quotation omitted)); *Reumayr*, 530 F. Supp. 2d at 1208 (considering defendant's resistance to extradition as weighing against him in the *Barker* analysis). Thus, even if Lawrence is deemed to have timely asserted his right to a speedy trial once he reached the United States, he did not do so when his pre-extradition conduct in Nigeria is considered. The Court accords no (or very little) weight to this factor, even if it could be said to tip in Lawrence's favor.

**D. Prejudice**

The balance of the first three *Barker* factors does not "weigh heavily" in Lawrence's favor. Accordingly, Lawrence is not entitled to a presumption of prejudice. He must show "actual prejudice" in order to prove a violation of his rights under the Sixth Amendment. Actual prejudice can include "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Doggett*, 505 U.S. at 654.

Lawrence has made no such showing. Lawrence states conclusorily that he "continues to suffer prejudice and his defense is being harmed by the Government's

refusal to provide any documents that contain vital information to his defense." Motion to Dismiss, at 6. These concerns are not prejudice attributable to any lack of a speedy trial. Lawrence's assumption in his briefing that it is "the Government's burden to prove a lack of prejudice" is not persuasive. *Id.*, at 8; *see Kessler*, 392 F. App'x at 765 (denying speedy trial claim because defendant "does not argue that he suffered any such prejudice"). Because Lawrence has not shown prejudice that he might face as a result of the delay in his case, the Court holds that his Sixth Amendment right to a speedy trial was not violated.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Amended Motion to Dismiss for Failure to Afford a Speedy Trial [Doc. # 516] is **DENIED**.

SIGNED at Houston, Texas, this 6th day of **December, 2013**.

Nancy F. Atlas
United States District Judge