IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:03-0436-1 |
| | § | |
| KOYODE LAWRENCE | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Koyode Lawrence's ("Defendant"
or "Lawrence") motions to set aside or reduce his sentence of 300 months
imprisonment the Court imposed on September 30, 2014.[1]  The United States filed a
Response [Doc. # 604].  Defendant did not file a reply or request for additional time
to do so.  Having reviewed the parties' briefing, all matters of record, and the
applicable legal authorities, the Court **denies** Defendant's Motions.

## I.    BACKGROUND

Lawrence operated an organization that imported at least 29 kilograms of heroin
from Nigeria into the United States by having people in Nigeria holding dual Nigerian

---

[1]    On October 8, 2014, Defendant filed a Motion for New Trial as to Sentencing
("Motion for New Trial") [Doc. # 592] and a Motion for Leave to File Motion for
New Trial as to Sentencing ("Motion for Leave to File") [Doc. # 591].  On November
17, 2014, Defendant filed a Motion for Sentence Reduction Pursuant to 18 U.S.C. §
3582 Retroactive Amendment 782, U.S.S.G. ("Motion for Reduction") [Doc. # 603].
The motions collectively are referred to as "Defendant's Motions."

and United States citizenship swallow large heroin-filled pellets, travel to the United States, and expel the pellets after meeting with Lawrence's associates. Factual Basis and Stipulation [Doc. # 560], at 2-3. On November 19, 2003, Lawrence and ten Co-Defendants were indicted in this Court on charges of conspiracy to import heroin and conspiracy to possess with intent to distribute heroin [Doc. # 1].[2] Lawrence is the lead defendant named in the indictment and is described as "the leader" of the organization. *See* Indictment, ¶ 1; Superceding Indictment, ¶ 1.

The Court has intricate knowledge of Lawrence's organization, having presided over the criminal proceedings for all of Lawrence's Co-Defendants. Eight of Lawrence's Co-Defendants pleaded guilty and were sentenced by the Court. Two Co-Defendants, Oladobe Timothy Aransiola ("Aransiola") and Taiye Kassim (a/k/a Sodik Adegun) ("Kassim"), were found guilty by a jury [Doc. # 177] after a five-day trial and were sentenced by the Court [Docs. # 277 and # 278].

Lawrence, a Nigerian national living in Nigeria prior to and at the time of the Indictment, was arrested in Nigeria on March 16, 2004 pursuant to requests by the United States for his provisional arrest and extradition. *See* Declaration of Timothy G.E. Hammer [Doc. # 516-2] ("Hammer Decl."), ¶¶ 10-14. He was held in Nigerian

---

[2]     A Superceding Indictment [Doc. # 97] was issued on April 4, 2004 against Lawrence and his Co-Defendants.

custody for more than nine years while he opposed extradition to the United States. Hammer Decl., ¶¶ 28-46, 55, 59, 68, 75-76; Declaration of Ayo Abraham Olorunfemi [Doc. # 516-4], ¶¶ 12-16, 19-22. Lawrence was finally surrendered to the United States on July 2, 2013, and he arrived in Houston, Texas the following day. Hammer Decl., ¶¶ 89-90. On April 23, 2014, shortly before trial was set to begin, Lawrence pleaded guilty to Count 1 of the Superceding Indictment, which charged him with conspiracy to import a controlled substance into the United States from a place outside the United States in violation of sections 952(a), 960(a)(1), 960(b)(1)(A), and 963 of Title 21 of the United States Code. *See* Plea Agreement [Doc. # 561], ¶ 1.

At a four-hour sentencing hearing held on September 30, 2014, the Court received testimony from three witnesses called by the United States. Co-Defendant Kassim testified about Lawrence's leadership role in the organization. *See* Amended Transcript for # 580–Sentencing ("Sentencing Transcript") [Doc. # 595], at 17-61. Olayinka Johnson, who grew up in Lagos and was housed in a Nigerian prison with Lawrence for several months, testified about the lenient prison conditions Lawrence experienced for part of the time he was in Nigerian custody. *Id.*, at 84-124. Terry Muise, an investigator with the U.S. Department of Homeland Security, testified about his interviews with Lawrence's heroin body couriers, including a woman who Lawrence used when she was fourteen or fifteen years old, and used again while she

was pregnant.  *Id.*, at 125-29.

The Court calculated Lawrence's offense level using the 2003 Sentencing Guidelines, the Guidelines in effect at the time of the offense of conviction.  The base offense level was 36.  *See* U.S.S.G. § 2D1.1(c)(2).  The Court added four offense levels, finding Lawrence was an organizer or leader of an extensive criminal activity involving five or more participants, *see* U.S.S.G. § 3B1.1(a), and two offense levels for use of a minor to commit the offense, *see* U.S.S.G. § 3B1.4.  The Court deducted three offense levels for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(a)-(b).  This resulted in a total offense level of 39 and a sentencing range of 262 to 327 months imprisonment.

The Court then considered the 18 U.S.C. § 3553(a) sentencing factors.  Of particular importance were the nature and circumstances of the offense and the need to avoid unwanted sentencing disparities.  Using, generally, students or college-age individuals with dual citizenship to ingest large quantities of heroin-filled pellets and smuggle a dangerous and illegal substance into the United States is a particularly heinous offense.  Kassim, one of Lawrence's "managers" in Chicago, was sentenced to 324 months imprisonment for his involvement in the organization [Doc. # 277].  Aransiola, another of Lawrence's "managers," received 360 months imprisonment [Doc. # 278].

After considering the Presentence Report, the objections, the Government's response, and the addendum, as well as all matters of record in Lawrence's case and the evidence at the sentencing hearing, the Court sentenced Lawrence to 300 months imprisonment, a sentence within the applicable Guideline range. Over the Government's objections, the Court stated its intention that Lawrence receive day-for-day credit for the 112 months he spent in Nigerian custody and the time he was transported or held in administrative custody prior to being turned over to the United States Department of Justice [Doc. # 587]. Lawrence now seeks to have his sentence set aside or reduced.

## II.    LEGAL STANDARD FOR MODIFYING A SENTENCE

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.'" *Dillon v. U.S.*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)) (alterations in original). "A trial judge lacks authority to correct a sentencing error unless Congress has provided otherwise." *U.S. v. Murray*, 700 F.3d 241, 243 (5th Cir. 2012) (citing *U.S. v. Addonizio*, 442 U.S. 178, 189 & n.6 (1979)); *accord U.S. v. Banks*, 770 F.3d 346, 348 (5th Cir. 2014). Under 18 U.S.C. § 3582(c), Congress has limited the authority of district courts to modify a term of imprisonment to the following circumstances: (1) upon a motion of the Director of the Bureau of

Prisons that meets certain requirements; (2) the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and (3) when the U.S.S.G. sentencing range has been subsequently lowered by the Sentencing Commission and the Guidelines modification is retroactive to the time of a defendant's original sentencing. As explained hereafter, these circumstances are not present here.

## III.    MOTION TO MODIFY UNDER RULE 35(a)

Lawrence argues that the Court has authority to set aside or reduce his sentence pursuant to Federal Rule of Criminal Procedure 35(a). *See* Motion for Leave to File [Doc. # 591]. Lawrence contends that his sentence is "illegal" because the United States knowingly presented false evidence at the sentencing hearing and the Court "misinterpreted" the Sentencing Guidelines. *See* Motion for New Trial [Doc. # 592], at 1. The Court lacks jurisdiction under Rule 35(a) to modify Lawrence's sentence and, even if the Court had jurisdiction, the Court would deny Lawrence's motions because there was no error in his sentencing.

### A.    Rule 35(a) Jurisdictional Limitation

Federal Rule of Criminal Procedure 35(a) provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The Fifth Circuit has "strictly construed" the time period for modification of sentences and deems it a jurisdictional limit. *U.S. v. Bridges*, 116 F.

3d 1110, 1112 (5th Cir. 1997) (citing *U.S. v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994))

(both addressing the seven-day window applicable under a prior version of Rule 35).

Lawrence's sentence was imposed on September 30, 2014, well more than fourteen

days ago. Lawrence's Motion for Leave to File and Motion for New Trial are denied

because the Court lacks jurisdiction to modify his sentence under Rule 35(a).

### B. Rule 35(a) "Error"

Alternatively, Lawrence's Motion for Leave to File and Motion for New Trial

are denied because there was no "arithmetical, technical, or other clear error" in his

sentencing. *See* FED. R. CRIM. P. 35(a). The Advisory Committee, when adopting the

1991 amendments to Rule 35, explained that the district court's authority to correct

a sentence is "very narrow" and extends "only to those cases in which an obvious

error or mistake has occurred in the sentence, that is, errors which would almost

certainly result in a remand of the case to the trial court." *U.S. v. Ross*, 557 F.3d 237,

241 (5th Cir. 2009) (internal quotation marks and citations omitted). According to the

Advisory Committee, Rule 35 "'is not intended to afford the court the opportunity to

reconsider the application or interpretation of the sentencing [G]uidelines or for the

court simply to change its mind about the appropriateness of the sentence.'" *U.S. v.

Mitchell*, 533 Fed. Appx. 387, 395 (5th Cir. 2013) (quoting *Lopez*, 26 F.3d at 520)

(alteration in original) (internal quotation marks and citation omitted).

### 1. No Rule 35(a) "Clear Error" Based on "False Testimony"

Lawrence contends that there was "clear error" at the sentencing hearing because his due process rights were violated by the United States knowingly presenting false evidence. Motion for New Trial, at 1. This assertion is unsupported by the record.

It appears that Lawrence relies on *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. "Under [*Brady*], a defendant may establish a due process violation if he shows that the prosecution suppressed evidence favorable to the accused and the evidence is material either to guilt or punishment." *Black v. Collins*, 962 F.2d 394, 407 (5th Cir. 1992). "'The Fifth Circuit has long abided by the standard requiring that for use of perjured testimony to constitute constitutional error, the prosecution must have knowingly used the testimony to obtain a conviction.'" *Id.* (quoting *Smith v. Black*, 904 F.3d 950, 953 (5th Cir. 1990), *vacated in part on other grounds*, 503 U.S. 930 (1992)). The Supreme Court does not "require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .'" *Giglio v. U.S.*, 405 U.S. 150, 154 (1972) (quoting *U.S. v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968)). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Id.* (quoting *Napue v. People of State of Ill.*, 360 U.S. 264, 271 (1959)).

Lawrence argues that Johnson's testimony about his prison conditions in Nigeria "surely qualifies as false testimony and such has been confirmed by not only the prison authorities in Nigeria but the Government's investigators that interviewed those authorities." Motion for New Trial, at 4. Lawrence does not present any meaningful arguments as to how the prosecution knew that any of Johnson's testimony was false. The Court does not find that the prosecution knowingly permitted Johnson to make a false statement. In any event, the alleged false statements did not affect the Court's sentence and thus cannot constitute "clear error." Johnson's testimony was relevant only to what credit Lawrence should receive for his time spent in Nigerian custody. The testimony applied only to a small portion of Lawrence's incarceration in Nigeria. The Court expressed its clear intention that Lawrence receive from the Federal Bureau of Prisons ("BOP") day-for-day credit, and did so over the Government's strenuous objections. The Court was never inclined to give Lawrence more "credit" than it granted. Lawrence exercised his right to fight extradition, thereby substantially extending his time in Nigerian custody. Day-for-day credit is warranted, but no more.

Lawrence asserts that the United States allowed Kassim to falsely testify about when he began to cooperate. *Id.*, at 2-3. The Court is unpersuaded that Kassim's testimony contradicted a prior statement made by the Assistant United States Attorney

recently appointed to handle this old case.[3]  However, even if the Court were to find

that the prosecution knowingly permitted Kassim to make a false statement, a finding

the Court does not make, there was no constitutional violation.  The time when

Kassim began to cooperate with the United States is relevant only to whether or not

Kassim may be eligible for a sentence reduction under Rule 35(b) of the Federal Rules

of Criminal Procedure.  This issue had no impact on the Court's findings or

conclusions regarding Lawrence's sentence.  Lawrence admits he "does not have a

dog in that [Kassim's Rule 35(b)] fight."  *Id.*, at 3.  More importantly, Kassim's

testimony corroborated and reinforced the rest of the evidence in the case, such as trial

testimony and other proceedings.[4]  The United States called Kassim to testify about

Lawrence's organization in Nigeria and Kassim's role interacting with Lawrence and

---

[3]  Kassim testified that he began cooperating with the United States shortly after he was sentenced in 2005. Sentencing Transcript, at 63. Lawrence claims that the prosecutor "repeatedly and consistently advised the Court that [Kassim] was never interviewed or debriefed or cooperated during the ten (10) years since his sentence until late 2013." Motion for New Trial, at 2. Lawrence cites many pages of hearing transcripts, but the vast majority contain merely unsupported allegations made by Lawrence's own counsel, not statements made by the United States.  In all of the pages, the most definitive statement made about whether Kassim was interviewed is: "Correct.  No, but we're scheduled to go interview them in the next–" Exhibit B to Motion for New Trial (Hearing Transcript from Pretrial Conference) [Doc. # 592-1], at ECF page 8. The prosecutor was new to the case when he made this statement at the initial conference.  *See* Response, at 15.  While Lawrence suggests that the prosecutor is asserting Kassim was never interviewed prior to 2013, the more logical interpretation (and the interpretation by the Court at the time) is that the prosecutor was responding to the Court's questions about who he needed to interview to prepare for trial.

[4]  Lawrence's counsel had access to and has represented to the Court he has reviewed the trial and possibly other transcripts.

the many heroin body carriers sent from Nigeria. The Court's decision that Lawrence was an organizer or leader of the importation scheme, a finding Lawrence does not challenge in his Motions, was not based exclusively on Kassim's testimony. There are no grounds for a Rule 35(a) sentence modification based on any alleged "false testimony."[5]

### 2. No Rule 35 "Error" Based on the Court's Interpretation of Sentencing Guidelines

Lawrence argues that his sentence is "illegal" because the Court "misinterpreted" the Sentencing Guidelines. Motion for New Trial, at 4. At the sentencing hearing, Lawrence requested a two level reduction in his offense level calculation pursuant to Amendment 782 to U.S.S.G. § 2D1.1(c), which amendment was to take effect about one-month after the sentencing hearing. The Court anticipated and considered Amendment 782 at the sentencing hearing and concluded that § 2D1.1 in the 2014 Guidelines, when considered in its entirety, provided for the same total offense level and sentencing range as the 2003 Guidelines. As the Court explained at the hearing, the November 1, 2014 U.S.S.G. § 2D1.1(c)(3) provides for a base offense level of 34, for the drug type and quantity involved in Lawrence's case, but his offense level increases two levels to 36 because Lawrence's offense involved

---

[5]    The Court again denies Lawrence's request to appoint a special prosecutor to investigate alleged false testimony. *See* Sentencing Transcript, at 136.

an aggravating role (*see* U.S.S.G. § 3B1.1)[6] and importation of a controlled substance and/or the use of a minor. Under the 2014 Guidelines § 2D1.1, when applied in its entirety, the total offense level is the same as under the 2003 Guidelines. *See* Sentencing Transcript, at 14.

Lawrence argues that the Court violated the *ex post facto* clause by considering the two-level enhancements in 2014 U.S.S.G. § 2D1.1(b)(15)(B) and (C). According to Lawrence, he was entitled to the two level reduction for drug quantity under the 2014 Guidelines, but it was unconstitutional for the Court to consider the rest of that same new Guideline, the two level increase for the specific characteristics of his offense (*i.e.*, use of a minor and/or importation of drugs). *See* Motion for New Trial, at 4-5. Lawrence mistakenly relies on *Peugh v. U.S.*, 133 S. Ct. 2072, 2084 (2013). *See* Motion for New Trial, at 5. In *Peugh*, the Supreme Court held, "A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Peugh*, 133 S. Ct. at 2084 (2013). This case is distinguishable from *Peugh*. Here, it is Defendant who *requests* the Court consider the new Guidelines. This case is also distinguishable because the new Guidelines do not increase the applicable sentencing range. There is only an increase—or a decrease—if the Court selectively ignores portions of the 2014 version

---

[6] Lawrence did not dispute that some level of aggravating role would apply.

of § 2D1.1.  The Court declines to read portions of § 2D1.1 out of context.  The Court's analysis is consistent with *Peugh*.  The Supreme Court instructed, "District courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense and use them to calculate the sentencing range correctly; and those Guidelines will anchor both the district court's discretion and the appellate review process in all of the ways we have described.  The newer Guidelines, meanwhile, will have the status of one of many reasons a district court might give for *deviating* from the older Guidelines, a status that is simply not equivalent for *ex post facto* purposes." *Id.* at 2087 (emphasis in original).  As directed by the Supreme Court, this Court began with the 2003 Guidelines; the Court considered the amendments in the 2014 Guidelines for a possible variance; the Court determined the 2014 Guidelines did not warrant deviation from the range established under the 2003 Guidelines.  The Court exercised its discretion not to apply one element of § 2D1.1 of the 2014 Guidelines in the absence of other applicable provisions of that Guideline.  The Court's interpretation of the Guidelines does not violate the *ex post facto* clause.

Finally, the Guidelines are advisory.  *U.S. v. Booker*, 543 U.S. 220, 245 (2005).  District courts "must make an individualized assessment [of the appropriate sentence] based on the facts presented."  *Gall v. U.S.*, 552 U.S. 38, 50 (2007).  As explained above, the Court considered the nature and circumstances of the offense to be

particularly heinous, perceived a strong need to avoid unwanted sentencing disparities with Lawrence's Co-Defendants, and considered the history and characteristics of Defendant. *See* 18 U.S.C. § 3553(a). There was no error in Lawrence's sentencing based on the Court's interpretation of the Guidelines. In any event, the Court would vary upward to impose the same 300 month sentence of imprisonment even if it gave Lawrence the two-point reduction under 2014 U.S.S.G. § 2D1.1(c)(3) but did not apply the corresponding two-point increase under 2014 U.S.S.G. § 2D1.1(b)(15).

Lawrence's motions to modify his sentence under Rule 35 are denied.

## IV.   MOTION TO MODIFY UNDER 18 U.S.C. § 3582(c)(2)

After Amendment 782 went into effect on November 1, 2014, Lawrence filed a motion seeking to reduce his sentence pursuant to § 3582(c)(2) arguing that Amendment 782 to § 2D1.1(c) creates a "new sentencing range" for his offense. *See* Motion for Reduction, at 2. For the reasons explained above, Amendment 782 does not create a new sentencing range for Lawrence's offense. Lawrence's Motion for Reduction pursuant to § 3582(c)(2) is denied.

## V.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Leave to File Motion for New Trial as to Sentencing [Doc. # 591] is **DENIED**. It is further

**ORDERED** that Defendant's Motion for New Trial as to Sentencing [Doc. # 592] is **DENIED**. Finally, it is

**ORDERED** that Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582 and Retroactive Amendment 782 U.S.S.G. [Doc. # 603] is **DENIED**.

SIGNED at Houston, Texas, this 12<u>th</u> day of **December, 2014**.

Nancy F. Atlas
United States District Judge